**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

YURY R.,[1]

           **Plaintiff,**

                                        **Case No. 2:22-cv-5048**

       **v.**                          **Magistrate Judge Norah McCann King**

LELAND DUDEK,[2]
**Acting Commissioner of Social Security,**

           **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Yury R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 29, 2019, Plaintiff filed his application for benefits, alleging that he has been disabled since January 7, 2019. R. 70, 84, 173–79. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 94–98, 100–09. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 110–11. ALJ Kenneth Ayers held a hearing on July 22, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert and Plaintiff's sister, who testified as a lay witness. R. 37–68. In a decision dated September 21, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 7, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 22–32. That decision became final when the Appeals Council declined review on July 5, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 2, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 3.[3] On February 24, 2023, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. R. 24. He was 54 years old on January 7, 2019, his alleged disability onset date. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 24.

At step two, the ALJ found that Plaintiff's depressive disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD") were severe impairments. R. 25.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 25–27.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 27–31. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a customer technical service manager; a composite job comprised of computer operations manager and microcomputer support specialist; and a computer operations supervisor. R. 30–31.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an industrial cleaner, a laundry worker, and a harvest worker—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 31–32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 7, 2019, his alleged disability onset date, through the date of the decision. R. 32.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 23. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Fauzia Mahmood, M.D.

In a letter dated January 16, 2020, Fauzia Mahmood, M.D., Plaintiff's treating physician since May 31, 2019, provided a statement regarding her mental status examination of Plaintiff and treatment for complaints of depression, anxiety, lack of concentration, and passive suicidal thoughts. R. 311–12. Plaintiff reported that his father and aunt had committed suicide, that he lived with his mother, and that although he had earned a graduate degree and had "held good jobs for most of his life[,]" he had been unemployed since January 2019. *Id.* Upon mental examination, Plaintiff was fully alert and oriented, had fair insight and judgment, had suicidal thoughts but no plan, had no homicidal thoughts, and denied hallucinations and delusions, although he "does feel at time[s] paranoid of what people think of him and gets anxious". *Id.* Dr. Mahmood diagnosed major depression, anxiety, and paranoid disorder. *Id.* Dr. Mahmood summarized as follows:

> Yury is 54 yr old male, he is currently unemployed, he feel nervous and anxious.
> He at times is overwhelmed with the fact that his father committed suicide at 57 by
> hanging he is focusing on his destiny. He is provided with hot line numbers and
> outside recourses to seek help by going for individual counseling is encouraged to
> leave his house for few hour d[ai]ly and get involved with volunteer work to get his
> confidence back to socialize. He is currently on Wellburtin 200mg a day for
> depression and Abilify 2mg a day for his anxiety and paranoid issues, he use[s]
> Ambien as needed to help him to sleep. I see Yury once a month for counseling and

8

medication follow up. He is recommended to seek individual therapist and to consider partial day hospital to get help to overcome his issues and slowly get involved with society and do some volunteer work.

R. 312.

On February 28, 2020, Dr. Mahmood completed a five-page, check-the-box, and fill-in-the-blank form entitled, "Social Security Disability Psychiatric Report." R. 357–62. Dr. Mahmood represented that she treated Plaintiff once a month, most recently on February 7, 2020. R. 357. She diagnosed major depression, an anxiety disorder, and features of PTSD. *Id*. Plaintiff's symptoms were "paranoid thoughts[,] [[illegible,] anxious, alone, at times isolate himself[.]" *Id*. Plaintiff had had no hospitalizations and participated in no day programs or out-patient programs; he denied any suicide attempts or psychotic breaks. *Id*. On Plaintiff's most recent mental status evaluation, he was oriented times three; he had passive suicidal thoughts but no psychosis, hallucinations, or delusions; he had a depressed mood with a sad affect and was somewhat paranoid; his appearance was appropriate, his speech was coherent, and his concentration and judgment were fair. R. 358, 359. Plaintiff could recall three of three words immediately and three words after five minutes; he could spell the word "world" forwards and backwards and could track conversation but needed frequent refocusing. R. 358. He reported that he lived with his mother and did not leave the house. R. 359. Dr. Mahmood opined that Plaintiff had no limitation in understanding and memory. She also opined that Plaintiff was "[l]imited" in his ability to sustain concentration and persistence, and "was unable to hold jobs[.]" R. 360. Plaintiff was also "[l]imited" in his ability to socially interact: Plaintiff "is anxious around people but take[s] care of his daily work/chores[.]" *Id*. According to Dr. Mahmood, Plaintiff could "drive his own car, can take public transportation[.]" *Id*. Asked to describe any other significant limitations, Dr. Mahmood responded: "pt need[s] coaching to set his routine of life[.]" *Id*. The

9

doctor also stated, "pt stays up all night does not adhere to routine[.]" *Id*. Dr. Mahmood further opined that Plaintiff's prognosis was fair, but she denied that Plaintiff was presently able to manage benefits in his own best interest, stating that Plaintiff needed his sister to assist him with his accounts. R. 361.

### B.    Paula Pesci, M.D.

On July 24, 2020, Paula Pesci, M.D., a psychiatrist, completed two check-the-box, and fill-in-the-blank forms regarding Listing 12.06, which addresses anxiety and obsessive compulsive disorders, and Listing 12.04, which addresses depressive, bipolar and related disorders. R. 413–16. In considering the paragraph A criteria for Listing 12.06, Dr. Pesci checked boxes indicating that Plaintiff had an anxiety disorder characterized by restlessness, difficulty concentrating, and sleep disturbance. R. 413. In considering the paragraph A criteria of Listing 12.04, Dr. Pesci checked boxes indicating that Plaintiff had a depressive disorder characterized by depressed mood; diminished interest in almost all activities; decreased energy; feelings of guilt or worthlessness; and thoughts of death or suicide. R. 415. As to the paragraph B criteria of Listings 12.06 and 12.04, Dr. Pesci checked boxes indicating that Plaintiff had moderate limitations in his ability to understand, remember, or apply information and interact with others, but marked limitations in his ability to concentrate, persist, or maintain pace and adapt or manage himself. R. 414, 416. As to the paragraph C criteria of Listings 12.06 and 12.04, *i.e.*, whether Plaintiff had a mental disorder that was "serious and persistent," Dr. Pesci checked the two boxes "N/A" and responded further as follows:

> Unable to comment. Record review as follows: Pt was referred to High Focus Center by his outpatient psychiatrist Dr. Mahmood. Pt reported his illness started in January 2019; and that he started treatment with Dr Mahmood in May 2019. Patient started treatment at High Focus Centers, Partial Hospitalization Program on 2/10/2020. He transitioned into the Intensive Outpatient Program, and completed treatment on 4/23/2020, He arranged to follow up with an outpatient provider.

*Id.* Dr. Pesci represented that she had treated Plaintiff from February 10, 2020, through April 23, 2020, and she indicated that Plaintiff's conditions had begun on February 10, 2020. *Id.*

### C.    State Agency Mental Consultants

Monica King, Psy.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on March 13, 2020. R. 71–83. Dr. King opined *inter alia*, that Plaintiff was moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was not significantly limited in his ability to ask simple questions or request assistance and accept instructions and respond appropriately to criticism from supervisors. R. 80. Under the heading, "MRFC — Additional Explanation[,]" Dr. King stated:

> A. Understanding and Memory
> Cl is able to understand and remember both simple and detailed instructions.
>
> B. Sustained Concentration and Persistence
> Cl can persist at tasks within physical tolerances and skill levels for an eight-hour day, with regular breaks and normal levels of supervision. Cl may become distractible at times.
>
> C. Social Interaction
> *Cl is able to accept instructions, respond to criticism and request assistance*. Cl is capable of maintaining basic standards of cleanliness.
>
> D. Adaptation
> Cl may have some adaptive limitations due to psychological concerns. Cl is cognitively and psychologically able to be aware of normal hazards, travel within the community, set realistic goals, and make plans independently.
>
> Cl is mentally capable of independently performing simple routine tasks on a sustained basis for a full standard 40 hour workweek
>
> Cl's functioning is likely to improve if cl remains compliant with treatment.

R. 81 (emphasis added). Dr. King concluded that Plaintiff was not disabled. R. 82.

Alexander Golin, M.D., reviewed Plaintiff's medical record upon reconsideration for the

state agency on September 10, 2020. R. 85–91. Dr. Golin agreed with Dr. King that, *inter alia*,

Plaintiff was moderately limited in his ability to interact appropriately with the general public

and to get along with coworkers or peers without distracting them or exhibiting behavioral

extremes, but was not significantly limited in his ability to ask simple questions or request

assistance and accept instructions and respond appropriately to criticism from supervisors. R. 89.

Dr. Golin also affirmed Dr. King's MRFC narrative, R. 90, and agreed that Plaintiff was not

disabled, R. 91.

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

The ALJ determined that Plaintiff had the RFC to perform "a full range of work at all

exertional levels but with the following nonexertional limitations: Is able to perform simple,

routine tasks, make simple work-related decisions, *and interact with coworkers and the public*

*occasionally*." R. 27 (emphasis added). Plaintiff argues that substantial evidence does not

support this RFC determination. *Plaintiff's Brief*, ECF No. 15, pp. 19–33; *Plaintiff's Reply Brief*,

ECF No. 23, pp. 3–6. For the reasons that follow, this Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §

404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with

determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*

*v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

physicians or State agency consultants—must make the ultimate disability and RFC

determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to

consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ

need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Plaintiff first argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to address any limitations in Plaintiff's ability to interact with supervisors. *Plaintiff's Brief*, ECF No. 15, pp. 19–24; *Plaintiff's Reply Brief*, ECF No. 23, pp. 3–5. Plaintiff specifically complains that, although the ALJ found at step three that Plaintiff had a moderate limitation in his ability to interact with others and limited Plaintiff's RFC to occasional contact with coworkers and the public, the ALJ placed no limits on Plaintiff's ability to interact with supervisors nor did the ALJ explain this omission. *Plaintiff's Brief*, ECF No. 15, pp. 22–24 (citing, *inter alia*, *Peggy C. v. Kijakazi*, No. 2:19-CV-17472, 2021 WL 3206812, at *5 (D.N.J. July 29, 2021)); *Plaintiff's Reply Brief*, ECF No. 23, pp. 4–5. Plaintiff's arguments are not well taken.

It is true that "[t]he public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." *Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015); *see also Lori O. S. v. O'Malley*, No. 23-CV-3859, 2024 WL 3522190, at *7 (E.D. Pa. July 24, 2024) (same). "If the ALJ distinguishes between groups for purposes of social interaction, she must explain and provide support for the distinction." *Lori O. S.*, 2024 WL 3522190, at *7; *see also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at

*1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why is doing so.").

Fairly reading the ALJ's decision, the Court concludes that the ALJ implicitly explained why he did not include in the RFC any limitations regarding Plaintiff's ability to interact with supervisors. The ALJ expressly considered—and found persuasive—opinion evidence from the state agency reviewing consultants that Plaintiff could, *inter alia*, "accept instructions" and "respond to criticism":

> *The concurring findings of state agency mental consultants Monica King, PsyD and Alexander Golin, MD are persuasive when considered as a whole because they are supported by explanation and consistent with the evidence available at the time the findings were rendered* (Exhibits 2A, pages 7-11 and 4A, pages 3-6). They found the claimant able to understand and remember both simple and detailed instructions, persist at tasks within physical tolerances and skill levels for an eight-hour day with regular breaks and normal levels of supervision, but may become distractible at times. *They found the claimant able to accept instructions, respond to criticism* and request assistance, and maintain basic standards of cleanliness, but indicated he may have some adaptive limitations due to psychological concerns. They found him cognitively and psychologically able to be aware of normal hazards, travel within the community, set realistic goals, make plans independently, and mentally capable of independently performing simple routine tasks on a sustained basis for a full standard 40-hour workweek. However, the consultants did not have an opportunity to review the fully developed record, which contains additional evidence of abnormal mental status examinations (See e.g. Exhibits 2F, pages 15-18; 3F, pages 2-3; 5F, page 38). This evidence supports additional restrictions more consistent with the residual functional capacity outlined above.

R. 30 (emphasis added). As detailed earlier in this opinion, the state agency reviewing consultants' opinions regarding Plaintiff's ability to accept instructions and respond to criticism is directly related to interacting with supervisors. R. 80 (finding that Plaintiff was "[n]ot significantly limited" in his ability to "to accept instructions and respond appropriately to

criticism from supervisors"), 89 (same); *see also* R. 81 (incorporating into the MRFC narrative

that Plaintiff could, *inter alia*, "accept instruction" and "respond to criticism"), 90 (same).

Accordingly, reading the ALJ's decision as a whole, the ALJ's discussion of the state agency

reviewing consultants' opinions in this regard permits meaningful judicial review sufficient to

conclude that substantial evidence supports the ALJ's failure to limit Plaintiff's RFC in

connection with social restrictions related to supervisors.[4] *Cf. Jones,* 364 F.3d at 505; *Cotter*, 642

F.2d at 704–06.

   In continuing to challenge the RFC, Plaintiff also contends that the ALJ erred in his

consideration of treating physician Dr. Mahmood's opinions. *Plaintiff's Brief*, ECF No. 15, pp.

24–33; *Plaintiff's Reply Brief*, ECF No. 23, pp. 5–6. This Court again disagrees.

   For claims filed after March 27, 2017,[5] the Commissioner's regulations eliminated the

hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20

C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner

will no longer "defer or give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s), including those from [the

claimant's] medical sources"). Instead, the Commissioner will consider the following factors

when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with

the claimant, including the length of the treating examination, the frequency of examinations,

and the purpose of the treatment relationship; (4) the medical source's specialization; and (5)

other factors, including, but not limited to, "evidence showing a medical source has familiarity

---

[4] In this regard, *Peggy C. v. Kijakazi*, No. 2:19-CV-17472, 2021 WL 3206812, at *5 (D.N.J. July
29, 2021) is distinguishable and Plaintiff's reliance on that case is therefore unpersuasive.
[5] As previously noted, Plaintiff's claim was filed on November 29, 2019.

with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there

are two equally persuasive medical opinions about the same issue that are not exactly the same,

then the ALJ must explain how he or she considered the other factors.").

In the present case, the ALJ specifically considered, *inter alia*, Dr. Mahmood's February

2020 opinion:

> Fauzia Mahmood, MD completed a form assessment in February 2020 opining the claimant has no limitation in understanding and memory, is limited in sustained concentration and persistence because he "was unable to hold jobs", is limited in social interaction because he is anxious around people but takes care of daily work and chores, and is able to drive his own car and take public transportation (Exhibit 4F). *This opinion is somewhat persuasive because it is consistent with evidence of passive suicidal thoughts, paranoia, anxiousness, nervousness, feeling overwhelmed, hopelessness, and loss of appetite* (See e.g. Exhibits 1F, pages 1-2; 2F, pages 3-4 and 31; 5F, page 38; 6F, and pages 7-8). *However, it is not adequately supported by explanation and is inconsistent with evidence of poor sleep, nightmares, and flashbacks* (See e.g. Exhibits 1F, pages 1-2; 2F, pages 3-4 and 31; 5F, page 38; 6F, and pages 7-8). *It is also inconsistent with evidence of normal appearance, average eye contact, normal motor activity, full alertness and orientation, cooperative attitude, clear and appropriate speech, logical and relevant thought processes, good insight, unimpaired judgment, normal intellectual function and memory, unimpaired ability to make reasonable decisions, no hallucinations or delusions, no suicidal plan, no homicidal thoughts, normal cognition, no changes in weight, improved sleep with treatment, and other minimal or normal findings* (See e.g. Exhibits 1F, page 1; 2F, pages 4, 7, 15-18, and 33-36; 3F, pages 1-3; 5F, pages 22, 28-29, 33, and 36; and 6F, pages 7-8). Further, the determination of disability is an issue reserved to the Commissioner.

R. 29 (emphasis added). In challenging the ALJ's consideration in this regard, Plaintiff first

argues that the ALJ made inconsistent findings when evaluating this opinion. *Plaintiff's Brief*,

ECF No. 15, p. 28; *Plaintiff's Reply Brief*, ECF No. 23, p. 6. Plaintiff specifically points out that

the ALJ found the opinion "somewhat persuasive because he is anxious around people but takes

care of daily work and chores, and is able to drive his own car and take public transportation[,]"

but nevertheless went on to find that the opinion "is inconsistent with evidence of poor sleep,

nightmares, and flashbacks". *Plaintiff's Brief*, ECF No. 15, p. 28 (citing R. 29) (internal

quotation marks omitted). It is true that the ALJ erred in this regard. However, the Court is not

persuaded that any such error requires remand. As set forth above, this finding was but one factor that the ALJ considered when discounting portions of Dr. Mahmood's opinion. R. 29. Specifically, the ALJ also considered minimal or normal mental examination findings—describing such findings with citation to the record—when finding that this physician's opinion was inconsistent with record evidence. *Id.*; *see also Henry v. Kijakazi*, No. 4:20-CV-1294, 2022 WL 956278, at *7 (M.D. Pa. Mar. 1, 2022), *report and recommendation adopted*, No. 4:20-CV-01294, 2022 WL 949992 (M.D. Pa. Mar. 29, 2022) (finding that substantial evidence supported the ALJ's evaluation of physician's opinion as unpersuasive where that physician's "own treatment records show, Plaintiff had generally unremarkable mental status exams, and occasionally her depression and mood worsened[;]" that when her depression and anxiety worsened and the physician changed the claimant's medications, the claimant improved; and that "other providers had similar findings[,]" including "at a May 2017 annual checkup, a nurse practitioner noted that Plaintiff had normal mood, affect, speech, behavior, judgment, thought content, cognition, and memory"); *Miller v. Comm'r of Soc. Sec.*, No. 3:20-CV-01088, 2022 WL 178590, at *7 (M.D. Pa. Jan. 18, 2022) (concluding that substantial evidence supported the ALJ's evaluation of a physician's opinion as unpersuasive because it was "inconsistent and unsupported" where "office records indicated that [the claimant] has 'consistently good hygiene and eye contract, no abnormal movements or behavior, cooperative behavior, normal speech, appropriate affect, coherent thought processes, no hallucinations, illusions, or delusions, no suicidal or homicidal ideations and fair insight and judgment [and that [the claimant's]] depression is controlled[,] and her mood is stable"); *cf. Maneer v. Comm'r of Soc. Sec.*, No. CV 23-548, 2024 WL 3377909, at *1 (W.D. Pa. July 11, 2024) (finding that "the ALJ properly evaluated the consistency and supportability" of opinion of "marked limitations in many areas of

18

mental functioning" as unpersuasive where such opinion "was not supported by her treatment records, which showed Plaintiff was 'doing really good[,]' and was inconsistent with other evidence of record including Plaintiff's generally normal mental status examination findings at the consultative examination"). Moreover, the ALJ properly noted that Dr. Mahmood's opinion of disability is an issue reserved to the Commissioner. R. 29; *see also Louis v. Comm'r Soc. Sec*., 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

Plaintiff nevertheless contends that the ALJ's reliance on these examination findings is the result of selective citation to the record, pointing to other evidence that he believes supports his position. *Plaintiff's Brief*, ECF No. 15, pp. 28–31; *Plaintiff's Reply Brief*, ECF No. 23, p. 6. The Court is not persuaded that this issue requires remand, however. As a preliminary matter, to the extent that Plaintiff relies on his own subjective statements, *Plaintiff's Brief*, ECF No. 15, p. 29, the ALJ properly discounted such statements, as discussed in greater detail later in this opinion. *See also Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*., No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own

subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted).

In any event, as set forth above, the ALJ expressly noted evidence that included "evidence of passive suicidal thoughts, paranoia, anxiousness, nervousness, feeling overwhelmed, hopelessness, and loss of appetite[,]" but also noted other evidence or normal or minimal mental health findings. R. 29; *cf. Davison v. Comm'r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."). Notably, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose Plaintiff's—or this Court's—own factual findings. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In continuing to challenge the ALJ's consideration of Dr. Mahmood's opinion and the RFC, Plaintiff insists that the ALJ failed to properly consider the consistency factor of that physician's opinion; Plaintiff insists that Dr. Mahmood's opinion is consistent with that of Dr.

20

Pesci. *Plaintiff's Brief*, ECF No. 15, pp. 31–33. According to Plaintiff, both physicians opined

that Plaintiff "had limitations in concentration and persistence; had a limited ability to socially

interact with others and was anxious around people and had difficulties managing himself as he

required coaching to perform his routines of life and stays up all night and does not adhere to a

routine." *Id*. at 32 (citing R. 360). Plaintiff contends that, if these limitations had been included

in Plaintiff's RFC, "there is no work that" Plaintiff could perform because the vocational expert

testified that "the identified jobs would be eliminated if a person was only able to concentrate,

pay attention or focus one-third of the day or needed one hour breaks at least three days a week

in addition to normal breaks or needed frequent supervision due to trouble functioning." *Id*.

(citing R. 65-67). Plaintiff's arguments are not well taken.

The ALJ expressly considered Dr. Pesci's opinion, but found that the opinion was "not

persuasive[,]" explaining as follows:

> Paula Pesci, MD completed a form opinion in July 2020 suggesting the claimant's
> impairments meet the "paragraph A" and "paragraph B" criteria of Listings 12.06
> and 12.04 (Exhibit 7F). The opinion is not persuasive because it lacks any
> supportive explanation and is inconsistent with evidence of normal appearance,
> average eye contact, normal motor activity, full alertness and orientation,
> cooperative attitude, clear and appropriate speech, logical and relevant thought
> processes, good insight, unimpaired judgment, unimpaired ability to make
> reasonable decisions, no hallucinations or delusions, no suicidal plan, no homicidal
> thoughts, normal cognition, improved sleep with treatment, significantly decreased
> nightmares, stable weight and appetite, fewer panic attacks, and no mood swings,
> which demonstrates the claimant retains abilities more consistent with moderate
> limitations (See e.g. Exhibits 1F, page 1; 2F, pages 4, 7, 15-18, and 33-36; 3F, pages
> 1-3; 5F, pages 22, 28-29, 33, and 36; 6F, pages 7-8; and 8F, pages 11-12, 15, and
> 17-28).

R. 30. The Court finds no error with the ALJ's consideration in this regard. *See Clarke v.*

*Comm'r of Soc. Sec*., No. CV 23-1484, 2024 WL 4252054, at *1 (W.D. Pa. Sept. 20, 2024)

("The ALJ also adequately analyzed the supportability of this opinion, pointing out that Ms.

Cohen did not support her opined limitations by reliance on any objective findings."); *B.K. v.*

*Comm'r of Soc. Sec. Admin.*, No. CV 21-5732, 2022 WL 1718047, at *4 (D.N.J. May 27, 2022) ("In terms of consistency, a medical opinion will be more persuasive when it is consistent 'with the evidence from other medical sources and nonmedical sources in the claims.'") (internal citations omitted); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under the applicable regulations, where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record"); *cf. Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Plaintiff does not challenge the ALJ's consideration of Dr. Pesci's opinion and the Court has explained that this consideration is supported by substantial evidence. Accordingly, the fact that Plaintiff believes that Dr. Mahmood's opinion is consistent with that other medical opinion does nothing to advance Plaintiff's argument that the ALJ committed reversible error.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Mahmood, the state agency reviewing consultants, and Dr. Pesci.

## B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of Plaintiff's subjective complaints. *Plaintiff's Brief*, ECF No. 15, pp. 33–42; *Plaintiff's Reply Brief*, ECF No. 23, pp. 6–7. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the

ALJ "must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

In the present case, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 30. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 28. In reaching this conclusion, the ALJ considered the longitudinal record, including the generally normal or mild clinical observations and improvement reflected therein:

> First, *the longitudinal record does not document notable objective findings or other evidence throughout the claimant's treatment history that would support the degree of limitation the claimant has alleged*. In terms of the claimant's alleged impairments, the record shows that the claimant has been diagnosed with and received treatment for depressive disorder, anxiety disorder, and PTSD.
>
> The record describes passive suicidal thoughts, paranoia, anxiousness, nervousness, feeling overwhelmed, hopelessness, poor sleep, nightmares, flashbacks, and loss of appetite (See e.g. Exhibits 1F, pages 1-2; 2F, pages 3-4 and 31; 5F, page 38; 6F, and pages 7-8). The claimant generally had anxious and depressed mood and flat or constricted affect and intermittently had disheveled appearance, intense eye contact, slowed activity, anxious attitude, and depressive thought content with preoccupations and ruminations. (See e.g. Exhibits 2F, pages 15-18; 3F, pages 2-3; and 5F, page 38). Even so, *the objective evidence typically documents normal*

> *appearance, average eye contact, normal motor activity, full alertness and orientation, cooperative attitude, clear and appropriate speech, logical and relevant thought processes, good insight, unimpaired judgment, normal intellectual function and memory, unimpaired ability to make reasonable decisions, no hallucinations or delusions, no suicidal plan, no homicidal thoughts, normal cognition, no changes in weight, improved sleep with treatment, and other minimal or normal findings* (See e.g. Exhibits 1F, page 1; 2F, pages 4, 7, 15-18, and 33-36; 3F, pages 1-3; 5F, pages 22, 28-29, 33, and 36; and 6F, pages 7-8). Considerably, *the claimant and his provider reported improvement by July 30, 2020 after only two months of counseling* (See e.g. Exhibit 8F, page 11-12). While the claimant had increased situational stressors later in 2020, *he continued to make improvements overall* (See e.g. Exhibit 8F, pages 15 [R. 431] and 17-28 [R. 433–44]). Specifically, he described increased sleep, significantly decreased nightmares, stable weight and appetite, fewer panic attacks, no hallucinations, and no mood swings (Id.). Therefore, the claimant's severe mental impairments resulting in fewer symptoms within a short period of beginning counseling is sufficiently accommodated by a restriction to simple, routine tasks involving simple work-related decisions and occasional interaction with coworkers and the public (See e.g. Exhibits 1F, page 1; 2F, pages 4, 7, 15-18, and 33-36; 3F, pages 1-3; 5F, pages 22, 28-29, 33, and 36; and 6F, pages 7-8).

*Id.* (emphasis added). The ALJ also found that Plaintiff's daily activities supported the degree of limitation reflected in the ALJ's RFC:

> Second, the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Notably, despite alleging that severe symptoms prevent him from working, the claimant reported that he is able to prepare meals and do his own shopping (Exhibits 5E and 9E). Further, while he indicated that he has some difficulty with motivation, he is able to perform personal care tasks (Exhibits 5E and 9E). Moreover, although the claimant alleged that he has severe difficulty concentrating, he is able to drive on his own and use public transportation (Exhibits 5E, 9E, and 4F). For these reasons, the ability to engage in such activities is indicative of a higher level of functioning than has been alleged and is inconsistent with total disability.

R. 29. The ALJ went on to consider that Plaintiff's care was generally routine or conservative:

> Third, although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature, which demonstrates that the impairments are not as limiting as has been alleged. Notably, the vast majority of the claimant's treatment since the alleged onset date has consisted of medication management and counseling and the evidence shows that this relatively conservative therapy provides adequate relief of the alleged symptoms (Exhibits 3E, 15E, 16E, and 18E). In fact, the claimant was

offered a higher level of care but told his provider he was "fine" and declined (Exhibit 6F, page 7).

*Id*. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, raises several challenges to the ALJ's consideration in this regard. First, Plaintiff contends that the ALJ erred in finding that the longitudinal record did not support his subjective complaints, complaining that, "as with his consideration of Dr. Mahmood's opinion, the ALJ again selectively cited from the evidence." *Plaintiff's Brief*, ECF No. 15, pp. 34–35 (citing record evidence that he believes supports his complaints). However, for the reasons already explained in connection with the consideration of Dr. Mahmood's opinion, the ALJ properly considered record evidence, including contrary evidence. R. 28–30. To the extent that Plaintiff insists that this evidence establishes that the ALJ erred in considering Plaintiff's subjective statements, his argument boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence, and an improper request to reweigh the evidence. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

Plaintiff next complains that the ALJ improperly cited to a note from July 2020, in which Plaintiff and his provider reported improvement, because other record evidence proves that any such improvement was not permanent. *Plaintiff's Brief*, ECF No. 15, pp. 36–38 (citations omitted). Plaintiff specifically points to, *inter alia*, treatment notes dated March 5, 2021, April 9, 2021, May 14, 2021, and June 14, 2021, reflecting "depression rated 8 out of 10 with passive

26

suicidal ideation, 'severe anxiety' with ruminating and obsessional thoughts, pressured speech requiring 'frequent interruption and redirection to answer simple questions,' 'numerous panic attacks,' and disturbed sleep with nightmares." *Id*. at 38 (citing, *inter alia*, R. 438, 441, 442, 444).

While it is true that the record contains such contrary evidence, the Court is not persuaded that this issue requires remand. As an initial matter, the ALJ noted that Plaintiff "described increased sleep, significantly decreased nightmares, stable weight and appetite, fewer panic attacks, no hallucinations, and no mood swings[.]" R. 28 (citing Exhibit 8F/15, 17–28, R. 431, 433–44). In other words, the ALJ accurately noted that, despite some setbacks and despite the persistence of some symptoms, Plaintiff did experience improvement into June 2021. *Id*.; *see also* R. 440 (containing treatment note dated March 22, 2021, reflecting, *inter alia*, that although Plaintiff reported feeling upset and concerned about an ill uncle, he "reported better mood" and "report[ed] sleeping better, less anxiety and denied current panic attack"; "client denied all risk factors"), 440–41 (containing a treatment note dated April 9, 2021, reflecting, *inter alia*, that although Plaintiff reported depression, anxiety, and panic attacks, he "[d]enies mood swings anger or loss of control. Denies auditory visual or command hallucinations. Sleeping improved with significantly decreased nightmares. Weight and appetite stable"), 442–43 (containing a treatment note dated May 14, 2021, reflecting, *inter alia*, that while Plaintiff stated that he was having a "very difficult time" he also reported that he is "starting to do better"; "[d]enies mood swings anger or loss of control. Denies auditory visual or command hallucinations. Sleeping improved with significantly decreased nightmares. Weight and appetite stable"), 443 (containing a treatment note dated June 7, 2021, reflecting, *inter alia*, that Plaintiff reported anxiety but "overall stable mood" and "is reporting sleeping better and denied current panic attacks" as well

as all risk factors), 444 (containing a treatment noted dated June 14, 2021, reflecting, *inter alia*, that Plaintiff reported doing "the same" psychiatrically despite death of close aunt and ruminating about turning 57 years old, which was his father's age at the time of his death; Plaintiff again "[d]enies mood swings anger or loss of control. Denies auditory visual or command hallucinations. Sleeping improved with significantly decreased nightmares. Weight and appetite stable"). As the Court previously explained, the Court will uphold the ALJ's decision if it is supported by substantial evidence, even if contrary evidence exists that could justify the opposite conclusion. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Plaintiff, however, insists that evidence of his stability does not establish that he is able to return to work. *Plaintiff's Brief*, ECF No. 15, p. 38. It is true that "stability does not equate to a specific medical condition. Indeed, someone can be stable with a chronic disabling malady or stable on a particular day or in a certain environment." *Nazario v. Comm'r Soc. Sec*., 794 F. App'x 204, 211 (3d Cir. 2019). Similarly, the fact that a claimant is "stable and well controlled with medication" does not necessarily establish that a claimant can return to work. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) (internal quotation marks omitted). In the present case, however, the ALJ's finding in this case "was based on the objective medical evidence contained in the psychotherapy treatment notes, and is not 'overwhelmed' by contrary evidence in the record." *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005) (citing *Morales*, 225 F.3d at 320); *see also Bucci for & on Behalf of Eland v. Saul*, No. CV 19-368, 2020 WL 709516, at *6 (W.D. Pa. Feb. 12, 2020) (affirming denial of benefits where "more than a scintilla of evidence supports the ALJ's conclusions[,]" including, *inter alia*, that "Plaintiff exhibited stable mental health when he complied with medication"); *Adorno v. Berryhill*, No. CV 15-4269, 2017 WL

6731623, at *10 (E.D. Pa. Dec. 29, 2017) (finding that substantial evidence supported the ALJ's decision where, *inter alia*, the claimant did not cast "doubt on medical records showing that when she participated in "active psychotherapy," she was "relatively stable" and that "[u]nlike in *Morales*, there is no medical evidence clearly supporting a finding that [the claimant] is unable to work. Rather, [the claimant's] medical records support the ALJ's finding that she is able to work, albeit with limitations").

In continuing to challenge the ALJ's consideration of his subjective complaints, Plaintiff contends that remand is required because the ALJ erred when relying on Plaintiff's "minimal [daily] activities" and did not consider his qualifying statements. *Plaintiff's Brief*, ECF No. 15, pp. 38–40. Plaintiff's argument is not well taken. Although Plaintiff stated in his function reports that "there are times" that his sister brings him soup and buys food for him, Plaintiff also reported preparing simple meals and shopping for food once a month for a couple of hours. R. 221–22, 247–48. In addition, although the ALJ specifically acknowledged that Plaintiff "has some difficulty with motivation" when it comes to his personal care, the ALJ also noted that Plaintiff was nevertheless able to perform such tasks. R. 29 (citing Exhibits 5E, R. 219–26, and 9E, R. 245–52). The ALJ also considered that Plaintiff could drive on his own and use public transportation. *Id*. In short, the ALJ appropriately considered Plaintiff's daily activities when discounting the extent of Plaintiff's subjective complaints and the Court will not re-weigh the evidence in this regard. *See Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity... and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); *Perkins*, 79 F. App'x at 514–15; *Starke v. Kijakazi*, No.

29

3:22-CV-01810, 2023 WL 10364981, at *8 (M.D. Pa. Oct. 31, 2023), *report and recommendation adopted*, No. CV 3:22-1810, 2024 WL 551883 (M.D. Pa. Feb. 12, 2024) (finding that the ALJ properly discussed the claimant's daily activities when evaluating the claimant's subjective statements as inconsistent with the record when the ALJ considered, *inter alia*, that the claimant "admittedly provides for personal care with reminders from family members;" "can prepare simple meals including sandwiches and frozen foods, which shows an ability to follow written directions") (internal quotation marks omitted); *cf. Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration").

Plaintiff also complains that the ALJ improperly described Plaintiff's treatment regimen as routine and/or conservative, arguing that his attendance in a partial hospitalization program in February 2020 undermines this description. *Plaintiff's Brief*, ECF No. 15, pp. 40–41. While it is true that the ALJ did not expressly acknowledge Plaintiff's participation in such program, the ALJ did consider in his decision Plaintiff's treatment notes from that partial hospitalization. R. 26, 28–30. Moreover, the ALJ expressly noted that Plaintiff declined a higher level of care in June 2020, at which time Plaintiff advised his provider that he was "fine[.]" R. 29 (internal quotation marks omitted). In any event, as discussed in detail above, Plaintiff's "essentially routine and/or conservative" treatment was but one factor that the ALJ considered when considering Plaintiff's subjective complaints. R. 28–29.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

###### C.    Third-Party Statement

Finally, Plaintiff argues that the ALJ erred when he did not credit the third-party statement of Plaintiff's sister. *Plaintiff's Brief*, ECF No. 15, pp. 42–45. Plaintiff's arguments are not well taken.

In the present case, the ALJ specifically considered Plaintiff's sister's statement, but found it inconsistent with the record:

> Although pursuant to 20 CFR 404.1520c and 416.920c we are not required to "articulate how we considered evidence from nonmedical sources," judicial notice is taken that third party statements have been submitted on behalf of the claimant. Specifically, Eugenia [], the claimant's sister, provided a Third-Party Function Report dated January 23, 2020 and provided testimony during the hearing (Exhibit 6E and Hearing Testimony). Her statements have been reviewed and considered in relation to the remainder of the record and are generally consistent with the claimant's allegations. However, they are inconsistent with the record for the same reasons discussed regarding the claimant's allegations (See e.g. Exhibits 1F, page 1; 2F, pages 4, 7, 15-18, and 33-36; 3F, pages 1-3; 5F, pages 22, 28-29, 33, and 36; 6F, pages 7-8; and 8F, pages 11-12, 15, and 17-28).

R. 30. While Plaintiff insists that the ALJ erred in his consideration of Plaintiff's sister's statement for the same reasons the ALJ erred in considering Plaintiff's subjective statements, *Plaintiff's Brief*, ECF No. 15, pp. 43–45, this Court has already explained that substantial evidence supports the ALJ's consideration of Plaintiff's statements. For the same reasons,

Plaintiff's arguments based on his sister's statement must fail. Moreover, even assuming for the sake of argument that the ALJ erred in his consideration of this third-party statement—which the ALJ did not—Plaintiff does not identify the particular portion of that statement upon which he relies, nor does he otherwise explain what this statement reveals or how it supports Plaintiff's subjective statements or a finding of disability. *See Plaintiff's Brief*, ECF No. 15, pp. 42–45. The Court will not hunt through the third-party statement to find evidence or to construct Plaintiff's arguments for him. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). Accordingly, Plaintiff has not shown that this issue requires remand.

**VI.    CONCLUSION**

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 4, 2025                            *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE